**SO ORDERED.**

**SIGNED this 20 day of June, 2014.**

$\hspace{10em}$ _Stephani W. Humrickhouse_
$\hspace{10em}$ **Stephani W. Humrickhouse**
$\hspace{10em}$ **United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **STEPHEN E. CREECH** <br> **EDNA B. CREECH** | **13-00817-8-SWH** |
|     **DEBTORS** | |
| **STEPHEN E. CREECH and** <br> **EDNA B. CREECH** | |
|     **Plaintiffs** | **ADVERSARY PROCEEDING NO.** |
|     v. | **13-00124-8-SWH-AP** |
| **ORMOND OIL & GAS CO., INC.** | |
|     **Defendant.** | |

## ORDER REGARDING MOTIONS TO DISMISS

The matters before the court in this adversary proceeding are (1) the motion of the defendant, Ormond Oil & Gas Co., Inc., to dismiss the second and third causes of action in the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable in this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, and (2) the motion of the

plaintiffs, Stephen E. Creech and Edna B. Creech, to dismiss the counterclaim filed by the defendant, also pursuant to Rule 12(b)(6). A hearing took place in Raleigh, North Carolina on February 19, 2014. The parties submitted post-hearing memoranda on March 5, 2014.

<u>Background</u>

Stephen E. Creech and Edna B. Creech filed a petition for relief under chapter 11 of the Bankruptcy Code on February 8, 2013. The debtors' Schedule D includes a claim of $100,000 held by Ormond Oil and Gas, Inc., based on a mortgage on debtors' "house and lot" located at 465 West Blanche Street, Selma, North Carolina. Ormond previously served as the debtors' propane gas supplier for their greenhouse operation. In 2011, the greenhouse suffered a power outage which disrupted cooling systems, causing a loss of the majority of the debtors' inventory and a corresponding financial loss. In the year that followed, the debtors were unable to meet payment obligations to Ormond in a timely manner and were informed that in order to continue receiving service, Ormond would require security for both the outstanding debt and debt to be incurred going forward. In November of 2012, the debtors agreed to pledge certain property as security for their outstanding debt to Ormond, and to this end, the debtors executed a note and deed of trust, creating a security interest in their residence. It is the debtors' position that they had agreed instead to pledge their business property as security, while Ormond maintains that the deed of trust accurately indicates the agreed upon collateral.

The debtors filed a complaint on July 29, 2013, stating three causes of action: (1) that the deed of trust is avoidable pursuant to 11 U.S.C. § 547(b) as a preferential transfer; (2) that the lien is unenforceable pursuant to 11 U.S.C. §§ 544 and 550, and therefore avoidable; and (3) that Ormond's claim should be disallowed because it violates Chapter 75 of the North Carolina General

Statutes. In response, Ormond moves to dismiss the second and third causes of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. Additionally, Ormond filed a counterclaim alleging that the debtors executed the note and deed of trust in order to obtain the immediate resumption of delivery of fuel products on credit, as well as Ormond's forebearance from taking action to collect the debt. As such, Ormond seeks a determination that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), alleging that the debtors obtained money, services, or an extension, renewal, or refinancing of credit by false pretenses, a false representation, or actual fraud. The debtors move to dismiss the counterclaim pursuant to Rule 12(b)(6), contending that it is time-barred by Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, and therefore Ormond has not stated a claim upon which relief can be granted.

## Discussion

During the hearing, counsel for the debtors indicated that the second cause of action would be withdrawn, as certain documents had been produced which rendered the claim effectively moot. On April 2, 2014, counsel formally withdrew the second cause of action, leaving only the third cause of action subject to Ormond's motion to dismiss.[1] The court will first consider Ormond's motion, followed by the debtors' motion to dismiss Ormond's counterclaim.

1. <u>Ormond's Motion to Dismiss Count Three of the Complaint</u>

The third cause of action alleges that Ormond improperly prepared the deed of trust by designating the debtors' residence as the encumbered property, rather than the business property, and recorded the deed of trust over the debtors' objection. Debtors contend that these alleged

---

[1] The first cause of action was not included in Ormond's motion to dismiss.

3

actions violate §§ 75-54 and 75-56 of the North Carolina General Statutes. These statutory provisions fall under what is known as the North Carolina Debt Collection Act (the "NCDCA"), which is found at N.C. Gen. Stat. § 75-50, et seq., and comprises Article 2 of Chapter 75. At the hearing, the court determined that the complaint sufficiently states a claim for relief under the NCDCA, and therefore the claim will withstand the motion to dismiss. However, the debtors request in their complaint that the court treble any damages awarded in connection with this claim pursuant to N.C.G.S. § 75-16. Ormond contends that the NCDCA provides for only actual damages and civil penalties, and specifically precludes the trebling of damages. The court took the issue of the availability of treble damages under advisement to determine whether this request should be stricken from the complaint. The treble damages statute in question is found within Article 1 of Chapter 75 of the North Carolina General Statutes, and provides

> If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

N.C.G.S. § 75-16 (2014). Thus, under N.C.G.S. § 75-16, a court is required to treble damages when awarded upon violation of Chapter 75. It is well established that this provision applies upon violation of the North Carolina Unfair and Deceptive Trade Practices Act, i.e., N.C.G.S. § 75-1.1. The point of contention is whether N.C.G.S. § 75-16 applies where damages are awarded under the NCDCA. Section 75-56 of the NCDCA provides as follows

> (a) The specific and general provisions of this Article shall exclusively constitute the unfair or deceptive acts or practices

4

> proscribed by G.S. 75-1.1 in the area of commerce regulated by this Article.
>
> (b) Any debt collector who fails to comply with any provision of this Article with respect to any person is liable to such person in a private action in an amount equal to the sum of (i) any actual damage sustained by such person as a result of such failure and (ii) civil penalties the court may allow, but not less than five hundred dollars ($500.00) nor greater than four thousand dollars ($4,000) for each violation.
>
> (c) The remedies provided by this section shall be cumulative and in addition to remedies otherwise available. Any punitive damages assessed against a debt collector shall not be reduced by the amount of the civil penalty assessed against such debt collector pursuant to subsection (d) of this section.
>
> (d) Notwithstanding the provisions of G.S. 75-15.2 and G.S. 75-16, in private actions or actions instituted by the Attorney General, civil penalties in excess of four thousand dollars ($4,000) shall not be imposed.
>
> (e) The clear proceeds of civil penalties imposed in actions instituted by the Attorney General shall be remitted to the Civil Penalty and Forfeiture Fund in accordance with G.S. 115C-457.2.

N.C.G.S. § 75-56 (2014). The key word in this statute, according to Ormond, is the word "notwithstanding," in paragraph (d). Ormond maintains that when viewed in light of the dictionary definition of this word, which is "despite," or "in spite of," paragraph (d) serves to limit damages under the NCDCA to actual damages and civil penalties up to $4,000. Def's Mem. at 3-4. The debtors, on the other hand, contend that although a *previous* version of N.C.G.S. § 75-56 specifically prohibited treble damages, the current version contains no such prohibition.

In 2009, the North Carolina legislature amended N.C.G.S. § 75-56 to its current state (as quoted above). See 2009 N.C. ALS 573. The prior version read as follows

> The specific and general provisions of this Article shall exclusively constitute the unfair or deceptive acts or practices proscribed by G.S.

5

> 75-1.1 in the area of commerce regulated by this Article. Notwithstanding the provisions of G.S. 75-15.2 and G.S. 75-16, in private actions or actions instituted by the Attorney General, civil penalties in excess of two thousand dollars ($2,000) shall not be imposed, nor shall damages be trebled for any violation under this Article. The clear proceeds of civil penalties imposed in actions instituted by the Attorney General shall be remitted to the Civil Penalty and Forfeiture Fund in accordance with G.S. 115C-457.2.

N.C.G.S. § 75-56 (2009). The revised statute kept much of the substance of the text the same. However, there are two significant revisions to the former version. First, new paragraph (b) adds language that describes the two distinct remedies available upon a violation of Article 2: actual damages and civil penalties. Secondly, new paragraph (d) represents a pointed departure from the prior version of the statute, with regard to the "notwithstanding" portion of the text. The prior version read

> . . . [n]otwithstanding the provisions of G.S. 75-15.2 and G.S. 75-16, in private actions or actions instituted by the Attorney General, civil penalties in excess of two thousand dollars ($2,000) shall not be imposed, *nor shall damages be trebled for any violation under this Article*.

(Emphasis added.) N.C.G.S. § 75-56 (2009). Thus, under the prior version of the statute, despite Chapter 75's mandate that a court treble any award of damages, civil penalties were capped at $2,000 and actual damages could not be trebled. When the statute was amended, however, the prohibition on trebling damages was specifically stricken, such that the "notwithstanding" portion now reads

> Notwithstanding the provisions of G.S. 75-15.2 and G.S. 75-16, in private actions or actions instituted by the Attorney General, civil penalties in excess of four thousand dollars ($4,000) shall not be imposed.

N.C.G.S. § 75-56 (2014). The court finds it telling that a phrase containing a specific prohibition was removed in its entirety. Reading the current "notwithstanding" provision together with

subparagraph (b), which separately delineates actual damages and civil penalties, the court concludes that only civil penalties are excepted from the trebling mandate. Although the statute once specifically prohibited the trebling of damages, there is no longer any such language to this effect. Thus, the statute creates the potential for an award of actual damages, which must be trebled, plus the imposition of civil penalties up to $4,000.[2]

Accordingly, Ormond's request to strike the treble damages demand from the complaint is denied.

2.     The Debtors' Motion to Dismiss Ormond's Counterclaim

Ormond's counterclaim is rooted in § 523(a)(2)(A) of the Bankruptcy Code, which excepts debt for false pretenses, false representations, or actual fraud from discharge, along with § 523(c)(1), which requires the filing of a formal action to have the debt deemed nondischargable. Rule 4007(c) of the Federal Rules of Bankruptcy Procedure provides that "a complaint to determine the dischargeability of a debt under §523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under §341(a)." In this case, the first date set for the § 341 meeting was March 14, 2013. Thus, the deadline to object to dischargeability of any particular debt was May 13, 2013. The counterclaim was filed on October 28, 2013, more than five months after the deadline. Ormond asserts that until the complaint was filed on July 29, 2013, it did not know it had reason or cause to pursue a nondischargeability action, and therefore could not have met the deadline to object to dischargeability, given that the complaint was filed after the deadline.

---

[2] Subparagraph (d) of N.C.G.S. § 75-56 may be subject to an additional interpretation. Rather than prohibiting the trebling of civil penalties, it could be interpreted to allow the trebling of civil penalties, but cap the trebled award at $4,000. Regardless, actual damages remain subject to trebling.

7

The debtors seek dismissal of the counterclaim pursuant to F.R.C.P. Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The debtors contend that F.R.B.P. Rule 4007(c) operates as a jurisdictional bar to late-filed nondischargeability actions. Ormond contends that Rule 4007(c) is not jurisdictional, but rather is in the nature of a statute of limitations, and therefore the court may apply equitable theories such as equitable estoppel or equitable tolling to allow the late-filed counterclaim to stand.

The Supreme Court has noted that when used in the interpretation of various rules, the term "jurisdictional" has taken on a meaning other than its literal one, i.e., whether the bankruptcy court is competent to adjudicate a matter. See In re Kontrick, 540 U.S. 443, 454 (2004). Instead, courts tend to use the term to indicate a nonextendable time limit. Id. In In re Kontrick, the Court determined that F.R.B.P. Rule 4004, which governs filing an objection to a debtor's discharge, is not jurisdictional in the technical sense of the word, because "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction." Id. at 453. Instead, the Court found that the "filing deadlines prescribed in Bankruptcy Rules 4004 and 9006(b)(3) are claim-processing rules that do not delineate what cases bankruptcy courts are competent to adjudicate."[3] Id. at 454. In reaching this ruling, the Court noted the similarity of Rule 4004 to Rule 4007:

> [u]nder Bankruptcy Rule 4007(c), essentially the same time prescriptions apply to complaints targeting the discharge of a particular debt pursuant to 11 U.S.C. § 523(c) . . . Rule 4007(c) tracks Rules 4004(a) and (b), and Rule 9006(b)(3) lists Rule 4007(c) as well as Rule 4004(a) among time prescriptions bankruptcy courts may enlarge "only to the extent and under the conditions stated [in the rules themselves]." Because of the practical identity of the time prescriptions for objections to the discharge of any debts under §

---

[3] F.R.B.P. Rule 9006(b)(3) governs the enlargement of time for filing an objection to discharge pursuant to Rule 4007.

8

> 727(a) and for objections to the discharge of particular debts under § 523(c), courts have considered decisions construing Rule 4007(c) in determining whether the time limits delineated in Rules 4004(a) and (b) may be forfeited. See, *e.g., In re Kontrick,* 295 F.3d 724, 730, n. 3 (CA7 2002) (citing *In re Santos,* 112 B.R. 1001, 1004, n. 2 (BAP CA9 1990)).

Kontrick, 540 U.S. at 448, n. 3. Based on Kontrick, as well as the Court's acknowledgment of the "sister" rule relationship between Rules 4004(a) and 4007(c), it follows that Rule 4007(c) is not jurisdictional, at least in the technical sense of the word.[4]

What the Court expressly did not decide in Kontrick, however, is whether claim-processing rules such as Rule 4004 (and by virtue of the discussion above, Rule 4007(c)), can be "softened on equitable grounds." 540 U.S. at 457. The Fourth Circuit touched on this question in Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244 (4th Cir. 1994), which involved an objection to discharge pursuant to Rule 4004(a). In that case, the bank filed a timely motion to extend the deadline to object to discharge, but missed the hearing by 25 minutes due to car trouble, and the motion had already been denied. The bankruptcy court granted a motion for reconsideration filed later that day, and the bank ultimately prevailed on its objection. The Fourth Circuit held that Rule 4004(a) "does not preclude the bankruptcy court from exercising its equitable powers in extraordinary circumstances." 14 F.3d 244, 248. Thus, the main difference between Farouki and the present case is that Farouki involved the application of equitable principles to permit reconsideration of a timely filed motion for enlargement of time, rather than to permit a late-filed nondischargeabilty action.

---

[4] In addition, in Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817 (2013), the Court laid down a bright line rule for determining whether a statutory limitation or rule is jurisdictional: unless Congress has specifically stated that a limitation is jurisdictional, it should be treated as nonjurisdictional. 133 S. Ct. 817, 824. No statute sets a time limit for filing an action to contest dischargeability of a particular debt; rather, the time limit is solely contained in Rule 4007(c). Thus, Sebelius provides an independent basis for construing Rule 4007(c) as nonjurisdictional.

It is notable, however, that in reaching its ruling, the Farouki court evaluated two lines of cases, one of which was led by In re Santos, 112 B.R. 1001 (9th Cir. 1990), and the other by In re Barley, 130 B.R. 66 (Bankr. N.D. Ind. 1991). The Santos court held that certain equitable principles may be applied to effect relief from the bar dates of Rules 4007(c) and 4004(a), while the Barley court, on the other hand, found the time limits under Rule 4007(c) to be jurisdictional. The Farouki court chose to follow Santos, characterizing it as the "more well-reasoned case on the issue." 14 F.3d at 248. The Santos case involved a late-filed objection to dischargeability of a debt following an agreement between the parties to extend the time to object without a formal extension of time. A few years after Farouki, the Fourth Circuit entered an unpublished opinion in In re Litty, 1998 U.S. App. LEXIS 15214 (4th Cir. 1998), holding that an extension of time to act under Rule 4007(c) was properly granted in order to correct a mistake of the court. The Litty court cited Santos for the notion that Rules 4007(c) and 4004(a) are not jurisdictional, and also cited European Am. Bank v. Benedict (In re Benedict), 90 F.3d 50 (2d Cir. 1996), which held that the time limit in Rule 4007(c) is subject to waiver, estoppel, and equitable tolling.

In holding that equitable principles may permit a court to extend the Rule 4007(c) time period after it has expired, the Benedict court held

> [t]he Supreme Court has stated that "statutory filing deadlines are generally subject to the defenses of waiver, estoppel, and equitable tolling." *United States v. Locke,* 471 U.S. 84, 94 n.10, 85 L. Ed. 2d 64, 105 S. Ct. 1785 (1985). There is nothing in the Bankruptcy Code that persuades us to hold that Rule 4007(c) is any different from a statutory provision that imposes a filing deadline. Nor do we perceive that there is a controlling policy goal that would be served by holding that Rule 4007(c) is jurisdictional. Our conclusion is also consistent with the line of cases that has allowed an extension of the time period when the creditor was affirmatively misled by the bankruptcy court as to the filing deadline. *See, e.g., In re Themy,* 6 F.3d at 688. Since equitable considerations cannot excuse a

> jurisdictional defect, there is implicit in those cases the concept that Rule 4007(c) merely establishes a filing deadline.

Benedict, 90 F.3d 50, 54.  This court agrees with the Benedict court and numerous other courts holding that equitable principles such as waiver, equitable estoppel, and equitable tolling may apply in construing the time limits of Rule 4007(c).  See, e.g., In re Hayden, 246 B.R. 795 (Bankr. D. S.C. 1999); In re Ghanei, 2004 Bankr. LEXIS 2369 (Bankr. E.D. Va. 2004).  Further, the court views this conclusion as consistent with the underlying bases of the Fourth Circuit cases discussed above.  The court finds that Rule 4007(c) is not jurisdictional, and equitable principles may be applied in considering whether to permit the late filing of Ormond's counterclaim.  However, the court will need further evidence to determine whether equitable relief is warranted on these particular facts.  Accordingly, a decision on the motion to dismiss Ormond's counterclaim will be deferred, and the court will consider further evidence at a hearing to be later set by the court.

Based on the foregoing, Ormond's motion to dismiss count three of the complaint is **DENIED**, and a decision regarding the motion to dismiss the counterclaim is deferred pending further hearing.

**SO ORDERED.**

**END OF DOCUMENT**