**SO ORDERED.**

**SIGNED this 28 day of May,2015.**



_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

| | |
|---|---|
| STEPHEN E. CREECH, | CHAPTER 11 |
| EDNA B. CREECH, | CASE NO. 13-00817-8-SWH |
| DEBTORS | |

_____

| | |
|---|---|
| STEPHEN E. CREECH, | ADVERSARY PROCEEDING |
| EDNA B. CREECH, | NO. 13-00124-8-SWH |
| PLAINTIFFS | |
| v. | |
| ORMOND OIL & GAS CO., INC., | |
| DEFENDANT | |

**ORDER REGARDING OBJECTION TO CLAIM
AND ADVERSARY PROCEEDING TRIAL**

This adversary proceeding came on to be tried in Raleigh, North Carolina, on August 28, 2014, January 27, 2015, and February 19, 2015. The hearing on the debtors' objection to the claim of Ormond Oil & Gas Co., Inc. was consolidated with the trial of the adversary proceeding.

A short order was entered on February 23, 2015, as a determination of the adversary proceeding and objection to claim was necessary to confirmation of the debtors' plan. The order provided that an opinion and judgment would follow, but held as follows:

1) The debtors' request for avoidance of the deed of trust dated November 13, 2012, and recorded on November 16, 2012, pursuant to § 547(b) is **ALLOWED**;

2) The debtors' claim pursuant to Chapter 75 of the North Carolina General Statutes is **DENIED**;

3) The counterclaim of Ormond Oil & Gas Co., Inc., seeking a determination that its debt is nondischargeable pursuant to § 523 is **DENIED**;

4) Ormond Oil & Gas Co., Inc.'s claim is allowed as an unsecured claim in the amount of $99,975.38.

## BACKGROUND

Stephen E. Creech and Edna B. Creech ("the debtors") have owned and operated a greenhouse wholesale business in Selma, North Carolina, since the 1970s. For the past thirty years Ormond Oil & Gas Co., Inc. ("the defendant") provided propane gas to the debtors to heat their greenhouse. The debtors typically made annual payments to the defendant in July and would settle their account in full. However, in the spring of 2011, a fallen tree limb damaged a power line on the debtors' business property, resulting in a power outage that caused extensive damage to the greenhouse crop. The debtors' insurance did not fully reimburse them for the loss, placing the debtors in significant financial difficulty. In July of 2011, the debtors failed to settle their account in full with the defendant and the account remained unpaid. The debtors were informed that in order to continue receiving service, the

defendant would require security for both the outstanding debt and debt to be incurred going forward. The debtors agreed to pledge certain property as security for their outstanding debt to the defendant. On November 13, 2012, the debtors executed a Future Advance Promissory Note ("the note") to evidence the debt, secured by a Deed of Trust (With Future Advance Clause) ("the deed of trust"). The deed of trust was recorded on November 16, 2012, at Book 4205, Page 885, Johnston County Registry and created a security interest in the debtors' residence. The note and deed of trust provided for a maturity date of May 1, 2013. At the time of the execution of the note and deed of trust, the debtors owed the defendant a balance of $77,958.91. The maximum amount of the debt under the note was $100,000. The note provided that it was given "wholly or partly to secure present obligations and future advances which may, from time to time, be incurred hereunder." It is the debtors' position that they had agreed instead to pledge their business property as security, while the defendant maintains that the deed of trust accurately indicates the agreed upon collateral.

In order to avoid the lien against the residence, the debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 8, 2013. The debtors' Schedule D includes a claim of $100,000 held by the defendant based on a mortgage on debtors' "house and lot" located at 465 W. Blanche St., Selma, North Carolina. The debtors' Schedule A values the residence at $122,890 based on the tax value. The debtors' 341 meeting of creditors was held on March 14, 2013. At the §341 meeting, the debtors stated their intent to avoid the defendant's lien.

The debtors filed a complaint on July 29, 2013, stating three causes of action: (1) that the deed of trust is avoidable pursuant to 11 U.S.C. § 547(b) as a preferential transfer; (2) that the lien is unenforceable pursuant to 11 U.S.C. §§ 544 and 550, and therefore avoidable; and (3) that the defendant's claim should be disallowed because it violates Chapter 75 of the North Carolina General

Statutes. In response, the defendant moved to dismiss the second and third causes of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief could be granted. Additionally, the defendant filed a counterclaim alleging that the debtors executed the note and deed of trust in order to obtain the immediate resumption of delivery of fuel products on credit, as well as the defendant's forbearance from taking action to collect the debt. As such, the defendant seeks a determination that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), alleging that the debtors obtained money, services, or an extension, renewal, or refinancing of credit by false pretenses, a false representation, or actual fraud. The debtors moved to dismiss the counterclaim pursuant to Rule 12(b)(6), contending that it was time-barred by Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, and therefore the defendant had not stated a claim upon which relief could be granted. On April 2, 2014, the debtors withdrew their second cause of action. On June 20, 2014, the court entered an order which considered the defendant's motion to dismiss the third cause of action and the debtors' motion to dismiss the defendant's counterclaim. The court determined that the complaint sufficiently stated a claim for relief under the North Carolina Debt Collection Act ("NCDCA") and also denied the defendant's request to strike the treble damages demand from the third cause of action. The court deferred ruling on the debtors' motion to dismiss the defendant's counterclaim and determined that equitable principles may apply in considering whether to permit the late filing of the defendant's counterclaim.

      The court conducted a trial of the merits of this adversary proceeding over several days of hearings. At the conclusion of the hearings, the court entered a short order on February 23, 2015, as referenced above, which set forth its ruling. This opinion sets forth the court's findings of fact and analyses.

**DISCUSSION**

I. <u>The Debtor's Request for Avoidance of the Deed of Trust Dated November 13, 2012, and Recorded on November 16, 2012, pursuant to § 547(b) is</u> **ALLOWED.**

As to the first cause of action, the complaint asserts that the deed of trust is avoidable pursuant to 11 U.S.C. § 547(b) on the grounds that the deed of trust was entered into within ninety days of filing of the bankruptcy petition, the balance on the debtors' account was an antecedent debt, the debtors were insolvent at the time the deed of trust was executed, and the execution and recording of the deed of trust allowed the defendant to receive more than it would have in a hypothetical chapter 7 case.

The debtors assert that on November 13, 2012, they placed an order for propane fuel and Edward Ormond, the defendant's principal, refused to provide the additional fuel because of the debtors' outstanding account balance from the previous year and demanded security in the form of a future advance deed of trust against the debtors' commercial property to secure the existing indebtedness as well as any future orders. With no other possible means to preserve their inventory, the debtors claim they conceded to the defendant's request and visited the office of the defendant's attorney Alan Hewett to execute the necessary paperwork.

According to the debtors, the defendant directed Mr. Hewett to prepare a deed of trust that identified the debtors' principal residence as the collateral rather than the commercial property. After the debtors executed the documents, the debtors' daughter and business manager, Amy Radford, reviewed the documents and discovered that the note listed an incorrect maturity date of May 2013 and also erroneously identified the debtors' residence as the collateral. The debtors assert they contacted Mr. Hewett's office to notify him of the errors and also had a conversation with the

defendant regarding the alleged errors upon which the defendant agreed to meet with them to resolve the issue. The debtors represent that on November 16, 2012, the defendant directed Mr. Hewett to record the deed of trust, fully aware of the debtors' objections and contrary to their previous agreement to resolve the issue. It is the debtors' position that they continued to rely on the defendant's statements that it would correct the deed of trust and the note, and continued to operate their business with the intention of paying off their note upon maturity.

In response, the defendant asserts that the deed of trust cannot be avoided under § 547(b), because the parties intended the transfer to be a contemporaneous exchange for new value given to the debtors, that is, a continuous supply of fuel. The defendant contends that the outstanding balance of $99,975.38, remaining on the debtors' account, is fully secured by the deed of trust on the debtors' primary residence. According to the defendant, the debtors were fully aware that the collateral they offered was their residence when they executed the deed of trust and that they freely executed the note and deed of trust in exchange for continued receipt of fuel supplies from the defendant. Further, the defendant claims it would not have agreed to take a security interest in the debtors' commercial property because the commercial property was fully encumbered.

The defendant asserts that the debtors misrepresented their ability and intent to repay the debt they owed and are now trying to rescind their agreement after the fuel was delivered. Because of the debtors' continuous misrepresentations, the defendant contends its damages were increased because the debtors ordered and accepted fuel from the defendant totaling $22,016.47 even after they were aware there was an alleged mistake with the documents. According to the defendant, prior to the commencement of the adversary proceeding, it had no knowledge of a mistake in the deed of trust and that it had been operating under the belief that its promissory note was fully secured by the debtors'

6

residence.

Section 547(b) allows a trustee to avoid certain transfers made by a debtor to unsecured creditors during the 90-day period prior to the bankruptcy petition date. *See* 11 U.S.C. § 547(b). Section 1107 places a debtor in possession in the shoes of the trustee with the power to initiate and prosecute preference actions. 11 U.S.C. § 1107(a). The debtors have the burden of proving the avoidability of an allegedly preferential transfer by meeting the five statutory requirements set out in § 547(b). 11 U.S.C. § 547(g). The elements of a preferential transfer applicable to this adversary proceeding are:

> any transfer of an interest of the debtor in property of the debtor–
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made–
>     (A) on or within 90 days before the date of the filing of the petition . . .
> (5) that enables such creditor to receive more than such creditor would receive if–
>     (A) the case were a case under chapter 7 of this title;
>     (B) the transfer had not been made; and
>     (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The debtors maintain that the deed of trust satisfies all elements of § 547, rendering it avoidable. The court agrees. The debtors correctly identify the deed of trust as the applicable transfer under § 547. Pursuant to § 547(e)(2)(B), a transfer is made when it is "perfected," and a deed of trust is perfected when it is recorded. Carter v. Homesley (In re Strom), 46 B.R. 144, 148 (Bankr. E.D.N.C. 1985). Thus, the transfer was "made" on November 16, 2012. Additionally, the transfer was made for the benefit of the creditor, the defendant, as it secured repayment of the debtors' outstanding account balance.

7

The transfer was also made for or on account of an antecedent debt. The debtors accrued their debt prior to November 16, 2012. In fact, the purpose of the deed of trust was to secure repayment of debts the debtors had previously accrued as well as any future orders. The parties stipulate that the transfer was made while the debtor was insolvent. Further, the parties made the transfer within the preference period; the debtors filed their voluntary petition on February 8, 2013, within ninety days of November 16, 2012.

Finally, the transfer enabled the defendant to receive a greater percentage of its claim than it would under the normal distributive provisions in a liquidation case. As a secured creditor, the defendant would receive 100% of its secured claim in a chapter 7; as an unsecured creditor, i.e., if the deed of trust transfer had not been made, it would receive less than 100% of the claim as is indicated in the liquidation analysis attached to the debtors' plan. Accordingly, the debtor has satisfied all of the elements of § 547(b) and the transfer is a preferential transfer.

Section 547(c) provides several affirmative defenses to avoidance of a preferential transfer. As a creditor, the defendant has the burden of proving the non-avoidability of a preferential transfer based on an affirmative defense. 11 U.S.C. § 547(g). According to the contemporaneous exchange for new value defense, a preferential transfer is not avoidable

> to the extent that such transfer was—(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange[.]

11 U.S.C. § 547(c)(1). "New value" is defined as

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation[.]

8

11 U.S.C. § 547(a)(2). In addition to showing that the preference payments were in fact substantially contemporaneous exchanges for new value, a creditor must also demonstrate that the payments were *intended* to be contemporaneous exchanges for new value. *See* 11 U.S.C. § 547(c)(1)(A); United Rentals, Inc., v. Angell, 592 F.3d 525, 533 (4th Cir. 2010). "Congress intended § 547(c)(1) 'to encourage creditors to continue to deal with troubled debtors' by 'prevent[ing] trustees from avoiding payments that were clearly intended to support a new transaction, instead of an antecedent debt.'" Campbell v. The Hanover Ins. Co. (In re ESA Envtl. Specialists, Inc.), 709 F.3d 388, 397 (4th Cir. 2013) (quoting United Rentals, 592 F.3d at 529).

The Fourth Circuit addressed the new value defense in Campbell v. The Hanover Ins. Co. (In re ESA Envtl. Specialists, Inc.), 709 F.3d 388 (4th Cir. 2013). There, the debtor provided environmental, engineering and construction services to government agencies. Id. at 391. In order to obtain new government contracts, Hanover Insurance Company provided the debtor with performance bonds totaling 3.9 million. Id. at 392. These surety bonds were in addition to other surety bonds issued by Hanover on behalf of the debtor prior to the new government contracts. Id. Hanover required the debtor to pay a fee and provide a letter of credit that would serve as collateral for the new bonds and all of Hanover's existing guarantees and surety obligations on behalf of the debtor. Id. The debtor transferred $1.375 million to SunTrust Bank in return for a letter of credit. Id. The debtor was awarded the new government contracts, but subsequently filed a chapter 11 bankruptcy petition. Id. Thereafter, Hanover drew the entire 1.375 million from the letter of credit. Id. Hanover asserted the new value defense. Id. In its discussion of the new value defense, the Fourth Circuit noted that the party with the burden of proof must prove the elements of §547(c)(1) and also "must prove with specificity the new value given to the debtor." Id. at 398. The party claiming the defense needs to

9

prove with specificity that the new value "had a value at least as great as the amount of the alleged preferential transfer." Id. at 399. The Fourth Circuit ruled that once Hanover offered into evidence that the debtor received new value of at least $1.375 million—the amount of the alleged preferential transfer—it did not need to demonstrate any exact figure above that amount. Id.

Here, the arguable "new value" is the amount of approximately $22,016.47, the amount the debtors still owe to the defendant based on the amount of fuel the defendant delivered to the debtors after the execution of the deed of trust. The defendant has failed to prove with specificity that the arguable new value amount of $22,016.47 had a value at least as great as the amount of the transfer—the deed of trust in the amount of $100,000. Further, the defendant has failed to show that deed of trust was neither in fact a substantially contemporaneous exchange for new value nor intended by both parties to be a contemporaneous exchange for new value. The "new value" received by the debtors of approximately $22,016.47 was not contemporaneously exchanged for the deed of trust. The deed of trust was recorded on November 16, 2012, the date the transfer was made. After the transfer was made, fuel was not delivered by the defendant to the debtors until November 23, 2012[1] and the value of the fuel delivered was substantially less than $22,016.47. Accordingly, the defendant has failed to prove the § 547(c) defense.

Because the deed of trust fully satisfies the elements of § 547 and the new value defense is not available to the defendant, the transfer is avoidable as a pure preference. As a result, the deed of trust cannot be reinstated in part to secure the amount owed to the defendant of $22,016.47. Accordingly, the deed of trust is avoided.

---

[1] There is some discrepancy in the evidence as to the exact date of fuel delivery after the date of recordation of the deed of trust. Debtors' Exhibit C—"Customer Inquiry"—indicates a delivery on November 26, 2012. Debtors' Exhibit 6—an invoice showing fuel delivery—indicates a delivery date of November 23, 2012.

10

II. <u>The Debtors' Claim Pursuant to Chapter 75 of the North Carolina General Statutes is **DENIED**</u>.

As to the third cause of action, the debtors contend that the defendant engaged in unfair and deceptive trade practices under N.C. Gen. Stat. § 75-50 by recording the deed of trust, and that the defendant's actions related to procuring the promissory note and the deed of trust constitute collection by unconscionable means under § 75-55. The debtors allege that they were harmed by the defendant's actions in that their residence, which was free of liens, was encumbered by a deed of trust that matured in only six months, and in order to avoid this fraudulently procured lien, they were forced to file for bankruptcy protection. Specifically, the debtors allege that the filing harmed their relationship with creditors, resulting in suppliers refusing to engage in business with the debtors or reducing or eliminating account terms. The defendant denies that it violated N.C. Gen. Stat. § 75-50 and that the debtors suffered no compensable damages as a result of the defendant's actions.

The NCDCA makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). Three threshold requirements must be met: (1) the alleged obligation is a debt, (2) the claimant owing the obligation is a consumer, and (3) the party attempting to collect the obligation is a debt collector. <u>Reid v.Ayers</u>, 138 N.C.App. 261, 263, 531 S.E.2d 231, 233 (2000). Based on the pleadings, it is uncontested that the threshold requirements are met. Once the threshold requirements are met, the plaintiff must show: (1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to plaintiff or his business. N.C. Gen. Stat. § 75-1.1; <u>Canady v. Mann</u>, 107 N.C. App. 252, 260, 419 S.E.2d 597, 602 (1992). A practice is deceptive if it has the capacity or tendency to deceive the average consumer, but proof of actual deception is not required. <u>Bernard v. Cent. Carolina Truck Sales, Inc.</u>, 68 N.C. App. 228, 230,

11

314 S.E.2d 582, 584 (1984). The plaintiff need not show fraud, bad faith, deliberate acts of deception or actual deception, but must at least show that the acts had a tendency or capacity to mislead or created the likelihood of deception. Spartan Leasing v. Pollard, 101 N.C. App. 450, 400 S.E.2d 476, 482 (1991).Whether the practice is unfair or deceptive depends upon the facts of each case. Bernard, 68 N.C. App. at 230, 314 S.E.2d at 584. With respect to the execution of a deed of trust, "mistake of one party to the deed . . . not induced by the fraud of the other, affords no ground for relief by reformation." Crawford v. Willoughby, 192 N.C. 269, 272, 134 S.E. 494, 496 (1926).

 The evidence presented by the debtors is insufficient to show that the actions of the defendant constituted an unfair trade practice. The testimony reveals no evidence that the defendant intended to maliciously defraud the debtors or to induce them to make the transfer against their will. Additionally, there is no evidence that the defendant made any false representations to the debtors. Instead, the debtors offered the defendant security to secure a past debt and so that they could sustain their greenhouse crop. The court concludes that the debtors freely entered into this agreement.

 Additionally, the debtors have failed to show any evidence of actual injury in the form of loss of use of specific property, the loss of value of property, or any other elements of damages as required by Chapter 75. Accordingly, the debtors' claim under the North Carolina Debt Collection Act fails.

III. The Counterclaim of the Defendant Seeking a Determination that its Debt is Nondischargeable pursuant to § 523 is **DENIED**.

 The defendant seeks to except the debtors' debt from discharge based on false pretenses, false representations, or actual fraud pursuant to § 523(a)(2)(A). Section 523(c)(1) requires the filing of a formal action to have the debt deemed dischargeable. Rule 4007(c) of the Federal Rules of

Bankruptcy Procedure provides that a "complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." F.R.B.P. 4007(c). In this case, the date first set for the § 341 meeting was March 14, 2013. Thus, the deadline to object to dischargeability of any particular debt was May 13, 2013. The counterclaim was filed on October 28, 2013, more than five months after the deadline.

The debtors seek dismissal of the counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The debtors contend that Federal Rule of Bankruptcy Procedure 4007(c) operates as a bar to the late-filed nondischargeability action. The court entered an order on June 20, 2014, addressing the issue of whether Rule 4007(c) is jurisdictional in nature as to bar late filed nondischargeability actions or whether it is in the nature of a statute of limitations, therefore allowing the court to apply equitable theories such as equitable estoppel or equitable tolling to allow the late-filed counterclaim to stand. Creech v. Ormond Oil & Gas Co., Inc., (In re Creech) 513 B.R. 482, 488-89 (Bankr. E.D.N.C. Jun. 20, 2014). The court found that equitable principles such as waiver, equitable estoppel, and equitable tolling may apply in construing the time limits of Rule 4007(c). Id. at 488 (citing e.g., In re Hayden, 246 B.R. 795 (Bankr. D. S.C. 1999); In re Ghanei, 2004 Bankr. LEXIS 2369 (Bankr. E.D. Va. 2004)). The court, however, ruled that it would need further evidence to determine whether equitable relief is warranted on the facts of this case and deferred a decision on the motion to dismiss the counterclaim pending further hearing.

The defendant contends that it filed its counterclaim after the deadline, because until the complaint was filed it did not know that it had reason or cause to file a dischargeability action, and therefore could not have met the deadline to object to dischargeability, given that the complaint was filed after the deadline. The debtors contend that the defendants were put on notice that there was an

issue with the deed of trust and the defendant had a duty to timely raise its action. Based on the evidence, the court finds that the debtors' prepetition conduct, specifically that of contacting counsel for the defendant and the defendant regarding a possible issue with the deed of trust and the fact that defendant has been well represented by counsel throughout the process, put a duty on the defendant to timely raise its action. Further, at the hearing, counsel for the defendant was unable to point to any cases where the court had allowed an extension of time under Rule 4007(c), where the creditor failed to file a motion to extend time to file a complaint prior to the original time expiring. Here, the defendant did not file the counterclaim until October 28, 2013, five months after the deadline to object to dischargeability expired. Accordingly, the court finds that equitable relief is not warranted based on the facts of this case.

Notwithstanding the court's finding that equitable relief is not permitted in this case, the court will nonetheless consider whether the debt is nondischargeable under § 523(a)(2)(A). The defendant maintains that the debtors' debt is nondischargeable under § 523(a)(2)(A) because the debtors acted fraudulently by misrepresenting their ability to repay, and that the defendant acted to its detriment in continuing to provide the debtors with fuel. The court disagrees.

The defendant carries the burden of proving the nondischargability of its debt by a preponderance of the evidence. Combs v. Richardson, 838 F.2d 112 (4th Cir. 1988). Under §523(a)(2)(A), a creditor must prove that the debtors amassed their debts due to "false pretenses, a false representation, or actual fraud[.]" 11 U.S.C. § 523(a)(2)(A).

The defendant failed to prove that the debtors made any false representations about their financial situation. In particular, the defendant failed to establish that the debtors acted fraudulently by continuing to accept fuel from the defendant. In fact, the male debtor testified that for some time

14

after the deed of trust was recorded he continued to expect the defendant to meet with him to discuss modification of the note and deed of trust and, based on that, continued to accept delivery of gas. The only evidence before the court on intent was Mr. Creech's testimony that he continued to accept delivery of gas with every intention of paying for it and paying off the note. Thus, the defendant's counterclaim fails, and the court finds that the debtors' debt is dischargeable.

## CONCLUSION

Based on the foregoing: 1) The debtors' request for avoidance of the deed of trust dated November 13, 2012, and recorded on November 16, 2012, pursuant to § 547(b) is **ALLOWED**; 2) The debtors' claim pursuant to Chapter 75 of the North Carolina General Statutes is **DENIED**: 3) The counterclaim of Ormond Oil & Gas Co., Inc., seeking a determination that its debt is nondischargeable pursuant to § 523 is **DENIED**; 4) Ormond Oil & Gas Co., Inc.'s claim is allowed as an unsecured claim in the amount of $99,975.38.

**SO ORDERED.**

**END OF DOCUMENT**